Miklos Varga, Esq. #210917
LAW OFFICE OF MIKLOS VARGA
Post Office Box 681
Helendale, California 92342
Telephone: (818) 542-6531
E-Mail: Vargalaw1@gmail.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY M. AARDEMA, AARDEMA & LONDON | Case No. 2:16-CV-1474 PSG (ASx) |
| Plaintiffs, | Hon. Philip S. Gutierrez |
| vs. | **OPENING EXPERT WITNESS DISCLOSURE: DECLARATION OF MIKLOS VARGA; ROBERT KNUDSEN AND FREDERICK FISHER** |
| IMPERIUM INSURANCE COMPANY, HOUSTON INTERNATIONAL INSURANCE GROUP and DOES 1 through 100 | **DISCOVERY CUT-OFF: 12-27-16** **PRE-TRIAL CONFERENCE: 03-20-17** **TRIAL: 04-04-17** |
| Defendants. | |

## PLAINTIFFS' OPENING EXPERT WITNESS DISCLOSURES

Plaintiffs Gary M. Aardema and Aardema & London ("Plaintiffs"), pursuant to Rule 26(A)(2) of the Federal Rules of Civil Procedure submits their Opening Expert Witness Disclosure for Expert Witnesses Robert Knudsen and Frederick Fisher.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual summary of the Plaintiffs' allegations are as follows:

- Plaintiff Gary M. Aardema is an attorney who had a valid policy of legal liability insurance with the Defendants;

- Plaintiff was sued in September, 2014 by a client for various causes of action that were covered under his 2014 insurance policy provided by the Defendant;

- Plaintiff in December, 2014 advised the Defendant he was being sued and requested that his defense be provided by the Defendant;

- The Defendant (via the Vice President of Claims - Howard Fishbein) denied coverage on January 8, 2015 to the Plaintiff citing a policy exclusion in the 2015 policy;

- The Plaintiff and Howard Fishbein exchanged emails from January 8, 2015 to approximately January 23, 2015;

- On January 23, 2015 Plaintiff sent an email to Howard Fishbein advising him that he cited the 2015 policy exclusion improperly in that Plaintiff was sued in 2014 - thereby Defendant's denial of coverage was erroneous based on the wrong policy;

- Howard Fishbein never responded to Plaintiff's email and no further action on the part of Defendant was taken;

- On August 26, 2015 Plaintiff's counsel (Miklos Varga) sent a certified/return receipt letter to Howard Fishbein detailing Plaintiff's claim and that Mr. Fishbein made an error citing the 2015 policy.  The letter was signed for at Mr. Fishbein's address;

- There was no response by Imperium to the August 26, 2015 certified/return receipt letter;

- From January, 2015 through approximately October, 2015 Plaintiff was denied legal representation by the Defendant;

- Almost two years after Plaintiff tendered his claim to Imperium one check was sent to plaintiff by Imperium as a small partial payment of the attorney's fees he incurred.  A significant amount of outstanding attorney's fees still remain to this date;

- In Discovery and informally via Defendant's counsel Defendant has adamantly claimed that the email sent by Plaintiff Aardema on January 23, 2015 was never received.

- 2 -

1   • At least fifteen (15) requests to be reimbursed attorneys fees and costs incurred in defending the

2   underlying lawsuit were made by Aardema.  It was almost one year later that a partial payment

3   was made for attorneys fees incurred by Aardema.

4   • The claim file was produced by Imperium which showed nothing more than the policies for the

5   2014 and 2015 period, a few emails and letters.

6   • Aardema has been forced to litigate this matter for one year.  The Plaintiffs have incurred

7   substantial attorneys fees and expert costs during this litigation to pursue the rightful benefits due

8   the Plaintiffs.

9

10

11   ///

12

13   ///

14

15   ///

16

17   ///

18

19   ///

20

21

22

23

24

25

26

27

28

## DECLARATION OF ROBERT KNUDSEN

I, ROBERT KNUDSEN, declare as follows:

1. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

## BACKGROUND

2. I am employed by Global Digital Forensics, Inc. (herein "GDF"). I am the Northeast Manager for the company, and as such, I supervise additional examiners in their computer forensics tasks. I hold the following certifications: CCE (Certified Computer Examiner), ComptiaA+, Network+, Security+, and CHFI (Certified Hacking Forensic Investigator). I have been accepted as an expert witness in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida Probate Division: (McLeoud v. McLeoud 2012), U.S. District Court of Utah (Clearone v. Wideband), New York Supreme Court (Benson v. Benson) and Nassau County Supreme Court. I have provided depositions and served as an expert in the U.S. District Court of Mississippi in the matter of JT Shannon v. Gilco.

3. I have worked as a computer forensics investigator and Electronically Stored Information (ESI) expert for over ten years. I have conducted forensic email investigations that have spanned millions of emails.

4. I have performed hundreds of forensic examinations on a wide range of computer hard drives, removable electronic data storage devices, and mobile computing devices including cell phones and smart phones, imaging and targeted data collection and lost file recovery and extraction procedures. I have used a variety of email and document processing tools to conduct searches for and to produce copies of responsive material from forensic images, targeted data

collections, backups and other sources.

5. A true and correct copy of my curriculum vitae and expert history is attached hereto as Exhibit 1.

## RETENTION

6. I have been retained by Plaintiffs Gary M. Aardema and Aardema & London in this case to assist with issues involving or relating to the production of electronically stored information (herein referred to as "ESI") and specifically emails sent between Plaintiff Gary M. Aardema and Howard Fishbein.

7. Global Digital Forensics, Inc. is charging Gary M. Aardema our standard rate for our analysis of this matter - $275/hour.

## DOCUMENTS REVIEWED

8. I reviewed the following documents while preparing this declaration:

a. Copy of Howard Fishbein's January 8, 2015 8:26 a.m. email sent to Gary M. Aardema;

b. Copy of Gary Aardema's January 8, 2015 2:26 p.m. email sent to Howard Fishbein;

c. Copy of Howard Fishbein's January 18, 2015 6:24 a.m. email sent to Gary M. Aardema;

d. Copy of Gary Aardema's January 23, 2015 3:51 p.m. email sent to Howard Fishbein;

e. Copy of the metadata from Gary Aardema's January 23, 2015 3:51 p.m. email sent to Howard Fishbein.

The documents were provided to Global Digital Forensics, Inc. on December 15, 2016.

## EMAIL

9. I have confirmed that Mr. Aardema has a business email account under the address *aardema1@aol.com.*

10. I have reviewed the metadata contained in the Gary Aardema January 23, 2015 3:51

p.m. email sent to Howard Fishbein.   This was the last email in the chain of emails exchanged between Mr. Aardema and Howard Fishbein.   Metadata is data stored in an email about the email. Often this data is not even viewable in email client application used to create the email. The amount of email metadata available for an email varies greatly depending on the email system. There are multiple places that contain metadata that would normally not be visible to a user and certainly not viable within a printed copy of the email. I refer to the To, From, CC, Subject etc. as simple headers. Full headers of an email can contain information such as the name of the computer system sending the email, recipients that may be hidden from the simple header, data and times that the email travelled and even additional email addresses that the sender or recipient used. Outside the header other relevant metadata may be extracted from the email client itself since some metadata related to the email is maintained within the email client, for example within Microsoft Outlook, a very popular email client.   This metadata can include information such as who and when the email was forwarded, edited, or if it had originally contained attachments. In addition, metadata contained within documents can contain information such as last authors of the document, edits made to the document, when the document was edited and by whom and possibly even revisions and versions of the document.

11.  I have determined from the metadata analysis of the Gary Aardema January 23, 2015 3:51 p.m. email sent to Howard Fishbein that it was sent as a "reply to" email sent acknowledging the receipt of the Howard Fishbein January 20, 2015 email.  I found that the metadata in the Gary Aardema January 23, 2015 3:51 p.m. email contained the language "It seems to me the exclusion applies to insurance for 2015 policy period.  The Moore claim was tendered before the new policy began, so it would be under the 2014 policy period.  Best Regards, Gary M. Aardema."

12.   I have confirmed with Plaintiff Gary M Aardema that none of the emails he sent to Howard Fishbein, including the Aardema January 23, 2015 3:51 p.m. email, "bounced or were returned as undeliverable.

13.   It is my opinion based on my 10 years of forensic computer analysis of millions of emails and given the specific facts identified above and revealed in my analysis of the documents identified in paragraph 9 that the probability that Howard Fishbein did not receive Mr. Aardema's January 23, 2015 3:51 p.m. email is at least 1 in 10,000.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of January 2017, in New York, New York.

*Robert Knudsen*

Robert Knudsen

## OPINION OF EXPERT WITNESS FREDERICK FISHER

Insurance expert Frederick Fisher will express his expert opinion on these issues:

Issue 1: Did Imperium's investigation of Aardema's claim fall below industry standards?

Issue 2: Did Imperium's delay in defending Aardema violate industry standards and California law?

Issue 3: Did Imperium's failure to fully reimburse Aardema violate industry standards and California law?

Issue 4: Did Imperium's failure to maintain a claims manual violate industry standards and California law?

Issue 5: Did Imperium's claims policies and procedures fall below industry standards?

Issue 6: Did Imperium Insurance Company engage in acts of bad faith?

Frederick Fisher answers the issues and gives the basis and reasons for his findings as follows:

Issues 1-6: Yes.  Basis for his findings are detailed in the declaration below.

## EXHIBITS ATTACHED

Frederick Fisher curriculum vitae and expert history

## DECLARATION OF FREDERICK FISHER

I, FREDERICK FISHER, declare as follows:

I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

### BACKGROUND

1. I am currently the President of California based Fisher Consulting Group, Inc. (hereinafter FCG). FCG provides professional consulting services in respect to Specialty Lines Insurance Policy Quality Control, Risk Management, Claims Consulting and Expert Witness Services. I previously was the Founder, President and post-acquisition Sr. Vice–President of E.L.M. Insurance Brokers, Inc., a California based insurance production facility.  I have been a licensed California Insurance Producer for over 22 years,  and a licensed California Insurance Claims Adjuster for over 38 Years. I have annually certified that I am up to date with California's Fair Claims Practice Regulations as required by law for all licensees. Over the past 41 years, I have

1  amassed extensive experience as a licensed Insurance Producer, Surplus Lines Broker, Managing

2  Underwriter, Compliance Specialist, Insurance Underwriter, Claims Adjuster, Claims Auditor, and

3  Risk Management and Insurance Consultant with an emphasis on Training, Loss Control, Claims and

4  Bad Faith Prevention. The majority of the aforementioned involved services were provided in

5  California or involved California Practices.

6     2. I have extensive experience with, and have written several publications regarding,

7  Commercial General Liability and Professional Liability Insurance issues. I have lectured extensively

8  on these topics in live presentations, webinars and video presentations. As related to this matter, I have

9  extensive experience with the standard of care, customs, and practices of insurance claims

10  professionals. As the Founder of a Claims Adjusting and Claims TPA (Third Party Administrator)

11  facility, I also have over 41 years of experience in handling, supervising and advocating claims issues

12  for brokerage customers. I am thus familiar with regulatory compliance, claims best practices, and

13  have lectured and published as to compliance with applicable laws and regulations.

14     3. For over 26 years, I have been the Senior Technical Advisor for *Professional Liability*

15  *Insurance*, a three volume reference Manual published by the International Risk Management

16  Institute (hereinafter referred to as IRMI). These manuals were used by the Professional Liability

17  Underwriting Society (hereinafter PLUS) as part of the required course materials for the original and

18  renowned Registered Professional Liability Underwriter (RPLU) designation. As PLUS introduced

19  new and updated Course materials, I served as a Special Materials Expert on many of those Course

20  Modules which included claims handling processes. I have testified as an expert witness in

21  California cases well over 30 times since 2007.

22     4. Germane to this case, I have created unique qualitative claim auditing techniques which

23  required review of over 50 claim handling and management issues together with a computer system

24  to track and generate statistical performance reports on an overall, divisional and individual basis.

25

26  Such techniques were adopted by internal auditing teams at several Insurers & Re-insurers and made

27  a permanent part of the LA Rapid Transit District (RTD- now known as the MTA) RFP's for bi-

28

annual audits of their Third Party Administrator (TPA). The initial 1986 Audit was the first time it was proven quantitatively via a qualitative claims audit that increasing claims staff expense so as to reduce per person case loads would result in a minimum overall total incurred savings of at least $5 to every $1 spent. Our auditing processes and the performance issues reviewed, and graded mirrored many of the claim handling requirements of the Fair Claim Practice Standards recommended by the National Association of Insurance Commissioners (NAIC). Most States have adopted the NAIC Model act as part of their own Fair Claim Practice Regulations. Our training programs were provided to many insurers on California Fair Claim Practices. When paired with our Claim Auditing services, significant claim costs savings were experienced with a drop in the frequency of bad faith case filings. Services were provided to Homestead Insurance Company, Transit Casualty Insurance Company, the RTD, AIG Claim and Underwriting Units, Reliance Insurance Company, Home Insurance Company, Transamerica Re-Insurance Company (auditing the California Bar Association Professional Liability Program), San Diego Trolley System Claims Administrator, and others.

5. I have attached a true and correct copy of my curriculum vitae and expert history as Exhibit 2.

**RETENTION**

6. I have been retained by the Insured Plaintiffs Gary M. Aardema and Aardema & London in this case to assist with issues involving insurance coverage, benefits and bad faith issues regarding failure to provide the benefits of the subject policy. Specifically, whether Imperium Insurance Company acted outside normal custom & practices and industry standard in respect to claims handling, claims investigation, claims documentation, providing a defense to its Insureds, providing Aardema the benefits of his policy and compliance with Insurance Code 790.3, California Code of Regulations 2695 et seq. I have also been asked to analyze and express an opinion on whether

Imperium's acts and omissions constitute violations of Insurance Code 790.3, California Code of Regulations 2695 et seq. and constitute 'bad faith."

7. Fisher Consulting Group, Inc. is charging Gary M. Aardema our standard rate for our analysis of this matter $450/hour.

**DOCUMENTS REVIEWED**

8. I have reviewed the following documents while preparing this declaration:

a. The *Aardema v. Moore* Complaint;

b. Moore's answer to the *Aardema v. Moore* Complaint;

c. Moore's cross-complaint against Aardema;

d. Aardema's answer to Moore's cross-complaint against Aardema;

e. *Aardema v. Moore* settlement;

f. List of costs incurred by Aardema in connection with the Moore matter;

g. List of attorneys fees incurred by Aardema in connection with the Moore matter;

h. Aardema correspondence with Imperium from December 9, 2014 through January 23, 2015;

i. 12-27-13 to 12-27-14 Imperium Insurance Policy issued to Aardema;

j. 12-27-14 to 12-27-15 Imperium Insurance Policy issued to Aardema;

k. Varga to Fishbein correspondence from August 26, 2015 through October 13, 2015;

l. *Aardema v. Imperium* Complaint;

m. Imperium's answer to the *Aardema v. Imperium* Complaint;

n. Varga to Hugener correspondence from October 16, 2015 through January 18, 2016;

o. Varga to Selfridge correspondence from February, 2016 through December, 2016;

p. Plaintiff Gary Aardema's Request for Admission [Set Four] No. 31 and Defendant Imperium

q. Insurance Company's Response to Request for Admission [Set Four] No. 31.

The aforementioned documents were provided to Fisher Consulting, Inc. on December 31, 2016.

**ANALYSIS AND OPINION**

9. My preliminary research from online data provided by the California Department of Insurance and other insurance related data rich websites confirms the following:

Defendant Imperium Insurance Company does business in California as a non-admitted insurer. They have elected not to voluntarily be pre-approved by the California Department of Insurance (hereinafter the CDI). Accordingly, and pursuant to the information currently posted on the CDI website: "LASLI is a voluntary list and insurers may opt off the list. As a result, there may be non-admitted insurers that are not on LASLI but pursuant to the NRRA and CIC Section 1765.1, are nonetheless eligible for use by surplus line brokers, as long as the broker has determined at the time of placement that the insurer meets specific eligibility criteria. Imperium therefore would not be subject to any review of their officers and directors background.

Imperium's failure to make a complete investigation of Aardema's claim

10. I have reviewed the *Aardema v. Moore* Complaint, Moore's answer to the *Aardema v. Moore* Complaint, Moore's cross-complaint against Aardema and Aardema's answer to Moore's cross-complaint against Aardema, the 12-27-13 to 12-27-14 Imperium Insurance Policy issued to Aardema, the 12-27-14 to 12-27-15 Imperium Insurance Policy issued to Aardema and the correspondence between Aardema and Howard Fishbein (VP of Claims) from the time period of December 9, 2014 through January 23, 2015.

11. The insurance industry standards and custom and practice of insurance companies is for any claim made by an Insured to be completely investigated before a coverage determination is made. I noted that from the Imperium Insurance file on December 17, 2014 Fishbein made a loss run on Policy No.: IFI 774453-00. This was the 12-27-13 to 12-27-14 policy. I also noted that the Moore

- 13 -

cross-complaint was filed against Aardema on September 17, 2014. It is standard industry practice to review the entire insured file including all policies that may cover the relevant claims period. It is my opinion that on December 17, 2014 when Fishbein made the loss run he was aware that the operative policy was Policy No.: IFI 774453-00 because he quoted such policy in the loss run. In Fishbein's January 8, 2015 denial letter he quotes Policy No.: IFI 774453-00 (12-27-13 to 12-27-14 policy) in the header of his letter as the applicable policy and in the body of the letter. Fishbein goes on to deny coverage based on the Preina Moore 9/17/2014 incident exclusion contained in the inapplicable Policy No.: IFI 774453-01 (12-27-14 to 12-27-15 policy). In my opinion, which is supported by California law, Fishbein's failure/refusal to acknowledge his own identification of the applicable policy and its applicable provisions in his January 8, 2015 denial letter falls far below the standards of the insurance industry and is in violation of California Code of regulations 2695 et. seq. and California Insurance Code 790.03.

Imperium's Failure to Defend Aardema upon submission of a valid claim

12. I have reviewed Aardema's Policy No.: IFI 774453-00 (12-27-13 to 12-27-14 policy) which is the policy that covers the date that the claim occurred. It is my opinion that the policy did cover Aardema for the benefit of providing for his defense in the pending Moore cross-complaint. It is custom and practice in the industry to provide for a defense if any part of a claim in the underlying suit could be potentially covered by the insurer's policy. This includes mixed claims (including independent wrongful acts), in which the case involves both the defense and prosecution in the same lawsuit. It is also industry standard that when providing for a defense in a mixed action the insurer retains the right of reimbursement for fees and costs that were not devoted to the defense of the case. Imperium did not do this in maintaining the right to potential reimbursement. In my opinion this conduct fails to meet the standards/custom and practice of the insurance industry and is in violation

of California Code of regulations 2695 et. seq. and California Insurance Code 790.03.

Imperium's Failure to reimburse Aardema for Attorneys Fees and Costs incurred in defending the underlying lawsuit

13. I have reviewed the list of costs and attorneys fees incurred by Aardema in connection with the Moore matter. I have also reviewed the Varga to Fishbein correspondence from August 26, 2015 through October 13, 2015 the Varga to Hugener correspondence from October 16, 2015 through January 18, 2016 and the Varga to Selfridge correspondence from February, 2016 through December, 2016. Imperium never timely advanced any amount of defense fees even if there was a belief some were unreasonable. Some funds could have been advanced with a cooperative interest in resolving the total due later. In fact, form October 2015, through January 18, 2016, Imperium and Ms. Hugener ignored 15 separate requests for either costs or attorneys fees to be paid (sent to coverage counsel from October 22, 2015 to January 18, 2016). On July 14, 2016 Varga confirmed in a letter to Selfridge, Imperium's promise to send a partial reimbursement (months before July, 2016). Selfridge ignored such letter for 3 months. It was on October 17, 2016 that Selfridge sent a partial reimbursement check stating, "I apologize for this delay." Why the one year delay in making an undisputed payment which Hugener sent to Imperium December 7, 2015 "for processing of payment." This speaks for itself. In my opinion, this too is below the standard of care and said actions constitute a disdain for proper Insurer conduct seen throughout the handling of this matter.

14. There was no attempt to possibly advance funds, yet again, Imperium did whatever they could to delay payment. It is my opinion that this refusal for a period of close to one year to reimburse the insured Aardema for the undisputed attorneys fees and costs incurred is an violation of both California Code of Regulations 2695 et. seq. and California Insurance Code 790.03.

Failure to Maintain a Claims Manual

15. I have reviewed discovery in this matter specifically Plaintiff Gary Aardema's Request for

Admission [Set Four] No. 31 and Defendant Imperium Insurance Company's Response to Request for Admission [Set Four] No. 31. The request states: "You never had a claims manual from January 1, 2012 through July 15, 2016." The pertinent response was, "Imperium admits that it had no claims manual that applied to its Policy Nos. IFI 774453-00 or IFI 774453-01 during the terms of those policies."

16. It is an industry standard and custom and practice to have a claims manual that provides for the prompt investigation and processing of claims. It is my opinion the maintenance of a claims manual is the foundation of the prompt investigation and processing of claims. Imperium's admission that it does not have a claims manual is a clear violation of California Code of Regulations 2695 et. seq. and California Insurance Code 790.03.

Failure to comply with record-keeping requirements

17. Not to have a Claims Procedures Manual is beneath the Standard of Care and certainly would contribute to a lack of consistency in the handling of claims by different internal personnel. Another consequence too is the inability of anyone to review what was done/or not done and whether that is or is not in violation of internal policies and procedures since there are none. This also constitutes a failure to be in compliance with California Code of Regulations 2695.3 requiring proper record keeping and this is equally beneath the Standard of Care . As an Auditor, this improper record keeping would result in a failing grade from me.

18. As a Claim Auditor, I have always looked at the date a claim was received, and compare that to the time taken to set up a claim file, acknowledge receipt of same to those that submitted the claim and the date an initial investigation was commenced or was at least attempted. In addition, the California Fair Claim Practice Regulations also sets minimum standards as responding to communications regarding claims-, i.e., requiring a response immediately, not exceed 15 days (Reg

2695.5 (b).

19.   The date of first contact with the Aardema Insured was very late. In fact, Gary Aardema emailed and mailed a first notice of claim to York Professional Liability Group on December 9th consistent with policy requirements. No acknowledgement was received nor any prior contact until Jan 8th, 2016.  On said date, a claims acknowledgement and a separate claims denial was emailed to Mr. Aardema by Howard Fishbein, some 30 days after the initial claims report to York.  Please note that although the Imperium Corporate Headquarters is in Houston, Texas, Mr. Fishbein operates in a Branch office in Morristown, NJ, not far from the York office in New York City.

20.   The facts above resulted in a 30 day delay to acknowledge the claim.  Imperium conducted no investigation to determine their coverage obligations as required in California. They never spoke with their Insured. In violation of Regulation 2695.4, Mr. Fishbein wrongfully denied any obligation to defend or indemnify their insured's by wrongfully misrepresenting the coverage provisions of the policy in force when the claim was first made against their Insureds.   Instead, Mr. Fishbein wrongfully quoted an "incident exclusion" adding the Moore matter to the endorsement as issued to the renewal of the correct policy. The underwriting Department could not have added the Moore matter to that endorsement without being told by the claims personnel that a claim had been submitted on the expiring policy in issue demonstrating the claim department knew the original incident exclusion did not exclude the Moore matter.

21.   While it may be argued by Defendants no one is perfect and that it was a simple mistake arising from some unexplained confusion, this argument fails, in my opinion, for numerous reasons. Mr. Fishbein has posted a resume and profile on Linkedin.  He is a licensed attorney for over 15 years and was previously employed by York for several years. In his claims denial letter to Aardema, he correctly sets forth the dates of coverage on page 1 and then cites the Moore matter (on page 2)

as contained in an endorsement for the renewal policy. The Sept. 17, 2014 incident date on page 2 of the letter. This is not reasonable to have missed that especially when denying a defense and indemnity. Such decisions must be carefully done with careful determination and consideration. California has always been zealous in requiring the Insureds' interests be equal to that of the Insurer. A simple phone call with the insured could easily have prevented such unlawful action together with living up to the well settled proposition as to *why coverage should be granted.* In my opinion, such disregard to exercise reasonable prudence and analysis is beneath the Standard of Care of a claims person of Fishbein's credentials.

Imperium's claims policies and procedures fall below the Industry Norm

22. My analysis and opinion expressed in paragraphs 10-21 bring me to the conclusion that Imperium's policies and procedures in regards to claims investigation, claims processing and compliance with California law specifically California Code of Regulations 2695 et. seq. and California Insurance Code 790.03 are either non-existent or so devoid of any compliance with the law as to render them useless.

Misrepresentation of policy provisions and benefits

23. On January 8, 2015, Mr. Aardema requested a copy of the endorsement relied upon. On January 23, 2015, Mr. Aardema emailed Mr. Fishbein and pointed out that the endorsement relied on was not the correct one. There was no response from Imperium, other than to claim that the email was not received despite the fact that all prior emails sent to the same email address had been received. Once again, Imperium failed to timely respond as required by law. These actions also are violations of Imperium's obligation not to misrepresent policy provisions and benefits as prohibited by California Code of Regulations 2694.4. In my experience, and opinion, I would give a failing grade as an Auditor for conducting a poor analysis of coverage. The mistake is clearly serious given

that Insurance is an intangible product. In fact, an insurer is selling one important thing, how they respond when a claim is submitted.  In this regard Imperium has failed to comply with the law and industry standards.

24. On or about August 26, 2015, Miklos Varga wrote Fishbein and pointed out the Coverage mistake amongst other issues. Despite sending the letter via express mail with a tracking number and a receipt showing delivery to the office, once again Imperium claims not to have received the letter (given the lack of a claims manual, we have no way of knowing how mail is to be received, stamped in and distributed as would normally be the proper process).  Imperium's violation of the record keeping law can not be used as a shield to protect it from liability due to its failure to maintain a claims manual to guide its claims personnel in policies and procedures.

25. After Mr. Varga followed up, and resent the letter, Mr. Fishbein acknowledged receipt thereof in his email to Mr. Varga of Oct 9, 2016. Mr. Fishbein did not reverse his denial prompting another letter dated October 13, 2015 which alleged bad faith by Imperium. This was another convenient denial of receipt of important correspondence. Imperium, when its coverage error was no longer deniable, demonstrated a lack of urgency in acting to protect its Insured.  A simple phone call to Mr. Varga could have alleviated the problem.

26. From October 2015 through January 18, 2016, extensive correspondence was exchanged between Varga and assigned coverage counsel for Imperium, namely Janice Hugener, Esq.  On October 9, 2015 Fishbein sends an email to Varga acknowledging the receipt of the very important August 26, 2015 Varga letter.  Hugener in her October 16, 2015 letter to Varga writes, "Imperium continues to await receipt of a copy of the August 26th letter, including a copy of the executed return receipt." There is a very serious disconnect in communications between Fishbein (the VP of Claims) and Hugener (coverage counsel) to the prejudice of the insured Aardema.  This seems to indicate a

continued desire to delay providing Aardema the due benefits under the policy as long as possible.

Imperium's Repeated Acts amount to Bad Faith

27. My analysis and opinion in regards to Imperium's failure to make a complete investigation of Aardema's claim, Imperium's failure to defend Aardema upon submission of a valid claim, Imperium's failure to reimburse Aardema for attorneys fees and costs incurred in defending the underlying lawsuit, failure to maintain a claims manual, failure to comply with record-keeping requirements, misrepresenting policy provisions and benefits, all leads to my opinion that Imperium's claims policies fall extremely below the industry norm and are not in compliance with California Code of Regulations 2695 et. seq. and California Insurance Code 790.03. It is my opinion based on my aforementioned analysis and findings that Imperium withheld rightful benefits which were due to Aardema and such was unreasonable and without proper cause. It is my ultimate conclusion that all of Imperium's cumulative actions undeniably amounted to 'bad faith.'

Conclusion

28. The entire claims handling by Imperium and its representatives was beneath the standard of care. Over 20 Communications went unanswered, Imperium has no procedure manual, no claims manual, no process to properly handle mail, properly document or maintain a claim file or preserve email, ignored repeated requests for assistance and fee payment, and miscommunicated with their own counsel. While they may claim plausible denial for many of these serious transgressions, given the frequency of Imperium's legal violations, it is hard to believe they are all innocent and explainable mistakes. In my opinion it is by design to try and cover up a serious coverage mistake made worse over time. There is no other conclusion to be made. Imperium acted in Bad Faith. I've seen slip and fall claims get more attention and investigation results than took place in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 2nd day of January 2017, in Los Angeles, California.

Frederick J. Fisher

## DECLARATION OF MIKLOS VARGA

I, MIKLOS VARGA, declare as follows:

I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

1. I am an attorney at law duly licenced to practice law in all courts in the State of California including the United States District Court, Central District of California.

2. I represent the Plaintiffs in this case Gary M. Aardema and Aardema & London.

3. Attached hereto is a true and correct copy of the declarations of Plaintiffs expert witnesses, Robert Knudsen and Frederick Fisher.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of January 2017, in Los Angeles, California.

_____
Miklos Varga

# EXHIBIT 1

## Robert Knudsen – Northeast Regional Manager, Global Digital Forensics

**Experience Highlights: Computer forensics and cyber security specialist,** possessing a unique blend of skills and experience ranging from law enforcement to the world of technology, which are both highly relevant in today's computer forensics, electronic discovery and cyber security arenas. Mr. Knudsen has 8 years of experience in the field of computer forensics, where he has conducted hundreds of computer forensics examinations in support of matters in federal and state courts throughout the United States.  Prior to his computer forensics career, he spent 8 years as a field technician and then as a manager, supporting hundreds of end users working at approximately 50 companies in multiple businesses and environments as they performed their day-to-day computer and network operations.  Before entering the computer field, he spent twenty years in law enforcement as a police officer in the New York City Police Department, where, among other duties, he compiled crime statistics in a proprietary database which he designed and deployed.  With Global Digital Forensics he has been instrumental in numerous cases not only for his technological and analytical prowess and expertise, but also as an expert witness on a wide range of criminal and civil matters. Mr. Knudsen has also led cyber security and incident response teams, in both penetration testing and vulnerability assessment capacities, as well as the detailed reporting and remediation of cyber events for organizations ranging from government agencies and high profile corporate entities, to healthcare, education and financial institutions.

**Labor Category:** Northeast Regional Manager, Certified Computer Forensic Examiner, Cyber Security Specialist

**Knowledge of Systems and Applications:**
- **EC Council**
  Computer Hacking Forensic Investigator
- **International Society of Forensic Computer Examiners**
  CCE – Certified Computer Examiner
- **CompTIA**
  Security+ - Covers preventative maintenance, basic networking, installation, troubleshooting, communication and professionalism
- **CompTIA**
  Network+  - Covers managing, maintaining, troubleshooting, operating and configuring basic network infrastructure
- **CompTIA**
  A+ - Covers preventative maintenance, basic networking, installation, troubleshooting, communication and professionalism
- **Microsoft**
  MCP Microsoft Certified Computer Professional
- **Microsoft**
  MOUS Microsoft Office User Specialist

**Technical Skills, Training, and Certifications:**
- Xways Forensics Training
- ISFCE / CCE Re-certification
- In service training - Global Digital Forensics
- EC Council Computer Hacking Forensic investigator
- NIST Computer Forensic Seminar
- Key Computer Services Certified Computer Examiner Training Course

- CISSP Training
- Westchester Community College, New York -Adult Education Program, Visual Basic 6.0
- Professional Career Development Institute, Georgia
- Visual Basic 4.0 Programming for Windows
- Professional PC Repair Program

**Expert Testimony and Affidavits on Computer Forensics**

| | |
|---|---|
| **Nassau County Criminal Court**<br>PSNY v Sullivan | 2016 |
| **Nassau County Family Court**<br>Daly v Sullivan | 2016 |
| **Suffolk County Supreme Court, 10th District**<br>Trinity Christian Center of Santa Ana, Inc. V. Koper | 2016 |
| **United States District Court, Eastern District of New York**<br>United States v Djibo | 2015 |
| **Massachusetts, Middlesex County Superior Court**<br>Lynn Schultz v Unisphere/Colpitts | 2014 |
| **New York Supreme Count**<br>Chan v Chuen | 2014 |
| **Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County**<br>McLeoud v McLeoud | 2012 |
| **New York Supreme Court**<br>Benson v Benson | 2010 |
| **Suffolk County Probation Hearing**<br>C/O Safran | 2010 |
| **United States District Court, State of Utah**<br>Clearone v Wideband | 2008 |
| **Nassau County Supreme Court**<br>C/O Searchhelp | 2008 |
| **Nassau County Supreme Court**<br>C/O Finkleman | 2008 |
| **United Stated District Court, State of Mississippi**<br>JT Shannon | 2008 |

# CHRONOLOGICAL EXPERIENCE

**2006 – Present**                                         **Global Digital Forensics**

### *Northeast Regional Manager*

Responsible for day to day operations of GDF forensics lab in White Plains, NY and to oversee and/or perform all associated technical, managerial and support duties, which include:

- Chain of custody evidence handling, analysis and direct communication with counsel regarding case findings
- Response to security incidents, including health organizations and government facilities
- Examination of  identified malicious software, such as bots, worms, and Trojans

- Analysis of malware to understand the nature of the threat and payload. This task usually involves reverse-engineering the compiled executable and examining how the program interacts with its environment
- Responsible for documenting and testing of malware in a virtual environment and to make security recommendations to clients based on the overall threat to remediate issues and prevent re-infection
- Acquisition of computer hard drives and server systems using Logicube Talon, Image Master Solo, FTK Imager and GDF Collector (proprietary tool tailored for intrusion analysis)
- Utilized numerous forensic and security based tools including Access Data Forensic Toolkit, Encase, X-Ways, ProDiscover, Sysinternals, Wireshark
- Monitored network traffic using netflow data, packet and session level inspection (Fidelis XPS)
- Review of firewall rulesets and security recommendations work directly with security teams and management during engagements to review and prepare recommendations for organizational policies
- Work directly with security teams and management during engagements to review and prepare recommendations for organizational policies

**2002 – 2006**                                     **Real-Time Computer Services**

*Client Service Coordinator Management*

Led a team of six IT field technicians supporting client networks located in New York City and Westchester County. Responsibilities included:

- Initial response to client requests and remote desktop and network support when applicable
- Project management for network upgrades, implementations and office move
- Managing and prioritizing client-wide database, and assisting in the planning and execution, while keeping focus on security vulnerabilities
- Submitting written and verbal status reports to CEO
- Imaging computer systems using Norton Ghost, versions 7 through 9, including corporate data management of client PC images for archive, back up and data recovery. Educated clients related to virus and email hoaxes, social engineering and phishing
- Processing and reviewing data submitted from field technicians related to server and firewall event logs
- Coordinating the review and roll out of security patches
- Following up with SANS, Internet Storm

**1982 – 2002**                                     **New York City Police Department**

*New York City Police Officer*

- 200 career felony arrests necessitating;
- Victim and perpetrator interviews, chain of evidence handling, direct interaction with District Attorney's office and court testimony
- Crime Analysis, Comp stat preparation – 3 years
- Worked closely with supervisors to develop information systems based on user requirements and scheduled weekly department strategy meetings, and updated members related to current informational trends
- Facilitated the identification and investigation of crime patterns, designed and implemented the Major Crimes Database for the New York City Police Department. Report preparation time was reduced from three days to one. Awarded a unit citation for innovative crime reduction analysis and strategies

Canine Program, Bloodhound Handler – 5 years
- Responsible for the training and maintenance of man trailing bloodhound. Crime scene response/evidence collection. Conducted searches for missing/lost people
- Presented lectures for Management/Investigators in the use of Police Canines as an investigative tool
- Special Operations Division 1 year
- Street Crime Unit – 5 years  City-Wide Anti-Crime Patrol, decoy operations, undercover
- Uniformed Police Officer – 3 years

# EXHIBIT 2

Frederick J. Fisher
Curriculum Vitae

## CURRICULUM VITAE

Frederick J. Fisher, J.D., CCP
President, Fisher Consulting Group, Inc.
214 Main Street, Ste 181
El Segundo, CA 90245
310-426 2105

As of October 2016

## EDUCATION:

1972-1976   Lincoln University Law School
San Francisco, California
Graduated - May 1976 - J.D. Degree

1968-1972   University of California at Berkeley
Graduated June 1972,  B.A. Degree in  Social Sciences

## PROFESSIONAL AFFILIATIONS:

Licensed property & casualty insurance adjuster (since 1979)
Licensed as a property & casualty insurance broker-agent (1978-1982, 1994-Present)
Licensed Surplus Line Broker (July 14, 1995 to Present)
Formerly licensed as a real estate agent  (1978-1982)
Certified Claims Professional (CCP)  9-2015 to Present

A Founding Member, and member of the ***Board of Trustees, Professional Liability Underwriting Society (PLUS)***  (1993-1999)

***President, Professional Liability Underwriting Society (1997-1998)***

***Vice President , Professional Liability Underwriting Society (1996-1997)***

***Secretary/Treasurer of PLUS and Member of Executive Committee*** (1994-1996)

***Chairman of the PLUS Budget Committee*** (1994-1996)

Co-Chair, ***PLUS Membership Committee*** (1993-1994)

Chairman, ***PLUS Communication Committee*** (1996-1997)

Frederick J. Fisher
Curriculum Vitae

Member, *Professional Liability Underwriting Society (PLUS) Education Committee* (1991 to 1994), RPLU Peer Review Committee (1992 to2006), and *Southern California PLUS Steering Committee* (1992 to 2005). Member, *Subject Matter Expert Team*- RPLU Professional Liability Insurance Claims Section (Feb- April, 2007), & Real Estate Professional Liability Module

**1990- Present, Senior Technical Advisor and Quarterly Supplement Author** for The Professional Liability Manual, published by The International Risk Management Institute.

2007 – **Member, ACORD Professional Liability Specialty Lines Working Group**, a committee consulting on standardization of the Specialty Lines Applications.

December 2013 – Present **Member- Editorial Board Agents of America**.ORG (AOA) – Responsible for assisting in the development and Risk Management and loss control publications for Insurance Agents & Brokers.

September 2013 – Present **-Faculty member and Member of the Executive Council, Claims College- School of Professional Lines** sponsored by the **Claims & Litigation Management Alliance**. Successful completion leads to the obtaining of the Certified Claims Professional designation(CCP). I am instructor on Professional Liability lines for Level 1, Level 2 and Level 3 Classes. I have authored or co-authored courses at each level and been a Course Instructor at each "College" since its inception in 2013. Course materials including Bad faith avoidance in each of the 3 levels.

**California Surplus Lines Contact Broker:**

| | |
|---|---|
| Philadelphia Insurance Company | 1996 - 2010 |
| Protective Specialty Insurance Company | 2010 - 2014 |

**SUMMARY OF SIGNIFICANT INDUSTRY CONTRIBUTIONS:**

**1978-** Created Loss Control Programs for Real Estate Brokers and Insurance Brokers. Significant losses were prevented and a reduction in claims frequency was achieved. Loss Control and Best Practice(s) procedures are now considered standard operating practices with many other professions and by Corporate Boards of Directors.

**1984-** Created tight Attorney Management & Litigation Guidelines as a TPA which were adopted by several mainline Insurers and Self-Insureds. The Guidelines also included requirements for claim resolution plans and strategies. Guideline compliance was an included item in the Claims Auditing services as described below.

Frederick J. Fisher
Curriculum Vitae

**1986-** Created Unique Qualitative Claim Auditing Techniques which required review of over 50 claim management issues together with a Computer system to track and generate statistical performance reports on an overall, divisional and individual basis. Such techniques were adopted by Internal Auditing teams at several Insurers & Re-insurers and made a permanent part of the LA Rapid Transit District (RTD- now known as the MTA) RFP for Bi-Annual audits of their TPA. The initial 1986 Audit was the first time it was subsequently proven quantitatively that increasing claims staff expense so as to reduce per person case loads would result in a minimum overall total incurred savings of at least $5 to every $1 spent. Our Auditing processes and the performance issues reviewed, graded, and mirrored many of the claim handling requirements of the Fair Claim Practice Standards recommended by the National Association of Insurance Commissioners (NAIC). Most States have adopted the NAIC Model act as part of their own Fair Claim Practice regulations.

Our Training Programs were provided many Insurers on California Fair Claim Practices. When paired with our Claim Auditing services, significant claim costs savings were experienced with a drop in the frequency of Bad Faith Case filings.

Such services were provided to Homestead Insurance Company, The RTD, AIG Claim and Underwriting Units, Reliance Insurance Company, Home Insurance Company, Transamerica Re-Insurance Company (auditing the California Bar Association Professional Liability Program), San Diego Trolley System Claims Administrator, and others.

**1986** Created Unique & Proprietary Claims Tracking TPA Software using Networked P.C.'s and a relational Database every bit as statistically powerful as mainframe systems at that time.

**1994-** Contributed to killing the proposed NAIC Model Surplus Lines Act that would have made Surplus Lines Brokers financially responsible for the insolvency of Non-Admitted Insurers (a misguided response to the crisis created by phony offshore Insurers)

**1990 – Present-**Association volunteer work (PLUS) as noted above, lecturing and educational publishing as noted below.

## REAL ESTATE PROFESSIONAL LIABILITY LECTURING:

June 1978 through 1992:  Speaker at loss control seminars on preventing real estate malpractice. Speaker at local board of realtors' seminars on preventing real estate malpractice of the following boards:

    San Francisco Board of Realtors
    Los Angeles Board of Realtors
    Anaheim Board of Realtors
    La Jolla Board of Realtors
    Newport Board of Realtors

Frederick J. Fisher
Curriculum Vitae
Page  4

> Camarillo Board of Realtors
> East Orange Board of Realtors
> South Orange Board of Realtors
> West Orange Board of Realtors
> San Diego Board of Realtors
> San Fernando Board of Realtors
> Costa Mesa Board of Realtors
> Los Angeles Region of Century 21
> Orange County Region of Century 21
> San Diego Region of Century 21
> Seminar sponsored by Cal Land Title
> Seminar sponsored by Tile Insurance and Trust Company
> In-house seminar sponsored by Van Vleck Realtors
> Cal Pacific Realty and Gribon Von Dyl Realty
> Faculty member for Northwest Center for Professional Education on environmental
> liability in real estate
> Video Professor for Lumbleau School of Real Estate
> > "Preventing Realtor Malpractice"

## PROFESSIONAL LECTURING ON INSURANCE MATTERS

Speaker on preventing insurance agents and brokers' liability to:

> Western Association of Insurance Brokers
> Agents Alliance Conventions for 1979, 1980, 1981, 1982, 1984,
> > 1985,1987, 1989, 1991,  1992,  1993, 1994 & 1997
> Los Angeles and Orange County CPCU Chapters
> Long Beach CPCU Chapter
> Independent Insurance Agents Associations of
> San Fernando Valley, Los Angeles, South Bay and Big "I" Day for the IIAA of Los Angeles,
> > Inland Empire and Orange County

June 23, 2016- CLE Seminar Presentation to Ervin, Cohen & Jessup, LLP, Beverly Hills, Ca. on **The Dangers that Lurk, Common Gotchya's in Professional Liability Coverage forms.,** and their implications for Bad Faith denials of Coverage.

June 10, 2016, (and repeated on Oct 19, 2016 in Dallas, Tx) Speaker and CE Presenter at the National Alliance for Insurance Education & Research, James K. Ruble MEGA Seminar- **Insuring Emerging Trends: The Internet of Things and other Technologies**

Frederick J. Fisher
Curriculum Vitae

July 2015- Dec 2015- Webinar presenter for Audio Solutions, LLC.   I was retained to present
Webinars on entitled **"What Every Broker needs to Know about D&O"** (07-15-2015), Do You
Know EPLI ? (08-13-2015),  **"To advise or Not To advise, What you need to know to
Avoid an E&O Claim"** (10-28-2015); and **"Insurance 101 for New Attorneys"** (Dec. 18, 2018).

Sept. 10-12, 2015- Faculty Member & Presenter, School of Professional Lines of the Claims &
Litigation Management Association:  Level 2 Course on <u>**Reducing Overall Claims Costs -
Proven Strategies**</u> , Level 3 Advanced Course on **Independent Counsel- Knowing,  When
and How to work with Them**,  (and avoiding Bad Faith),  Author  of and Oral Examination
Grader- **Level 3 Certification**.

Aug. 11,  2015:  Author and Sr. Panelist Webinar,  "Insurance 101 for new Attorneys (and
others too**), sponsored by the Claims & Litigation Management  Alliance.** The Course
included a lengthy discussion and analysis of the potential for Bad Faith that can arise from
Diminishing Limit policies.

July 15,  2015 : **Instructor for** <u>**"What every Agent Needs to know about Current  D&O
developments"**</u> Webinar sponsored by Audio Solutions

June 4, 2015:  Panelist and Presenter on **"Merger and Acquisitions in the Medical
Industry after ACA"** sponsored by the Claim & Litigation Management association at their
annual Professional Liability Conference– Chicago.

Mar.  27, 2015- Panelist for the Calif. Assoc. of Residential Property Managers –**Risk
Management and E&O Insurance Issues**

Mar.  17 & 18, 2015  **BOX—WHAT BOX? THINKING BEYOND THE SAME**, a CE Seminar
Co-Presented with Louis Castoria, Esq., Sponsored by the Calif. Surplus Lines Association

January 20, 2015- Massachusetts Banking Association- Webinar Instructor on **Cyber
Liability**

Sept. 29, 2014,  **"The Industry in a 60 Minute Nutshell "**  presented to Students at Cal State
University, Fullerton,  Center for Insurance Studies

Sept 25, 2014 Insurance Journal/Academy of Insurance Webinar Instructor on **"Flirting with
Disaster- Misunderstanding Employment Practice Liability"**

Frederick J. Fisher
Curriculum Vitae

Sept. 9, 2014   Faculty Member, School of Professional Lines of the   Claims & Litigation Management Association: **Reducing Overall Claims Costs - Proven Strategies,** and avoiding Bad Faith when doing so.

Aug 6, 2014- Insurance Journal/Academy of Insurance Webinar Instructor on "**Comparing D & O Forms: What to Look for; Ask for and Run Screaming From**"

July 15, 2014 –Webinar Panelist on Escrow Co Liability and E&O- Cyber Insurance need,

Jun 23, 2104 Panelist on "**Evolution of EPLI Policies",**  sponsored by the American Conference Institute.- Chicago Il.

May 20 & 21, 2014- (Los Angeles & San Francisco) Co-Instructor with Louis Castoria Esq. for CE Seminars presented by the California Surplus Lines Association entitled **Specialty Lines Claims-The Profit Center of the Industry,  and** how Bad Faith creates Underwriting Losses

Feb. 7, 2014 - Seminar on **Insurance Basics for Defense Lawyers,** potential for Bad Faith that can arise from Diminishing Limit policies,  sponsored by Collins, Collins, Muir & Stewart, Pasadena office- Streamed to Branch Offices, potential for Bad Faith that can arise from Diminishing Limit policies.

Sept 9, 2013, Faculty Member, Professional Lines College at the inaugural Claims College sponsored by the Claims & Litigation Management Association: **"Coordinating the Process", and avoiding Bad Faith.**

June 2, 2013- Panelist on "**Evolution of EPLI Policies",**  sponsored by the American Conference Institute.

May 23, 2013- Instructor for  **"What Every Agent Needs to Know about Cyber Liability**" Webinar sponsored by the Academy of Insurance

February 26, 2013- PLUS Webinar Presenter and Panel Member- **"E&O Insurance Profits via Proper Coverage, Good Service and avoiding Bad Faith"**

Dec. 5, 2012, Instructor for **"What to Expect from Specialty Lines Claims**" Webinar sponsored by the Academy of Insurance- including discussions on the importance of avoiding Bad Faith.

Sept. 5, 2012 – CE Course delivered to the Insurance Professionals of Orange County- **"The**

Frederick J. Fisher
Curriculum Vitae

### Dangers Lurking in Claims Made Insurance Policies, nad how Bad Faith can result"

March 1, 2012- Instructor for **"What Every Agent Needs to Know about Cyber Liability**" Webinar sponsored by the Academy of Insurance

Nov 9, 2011, Instructor for **"What to Expect from Specialty Lines Claims, and the Threat to Profitability arising from Bad Faith**" Webinar sponsored by the Academy of Insurance.

January 28, 2011, **CLE Seminar on Insurance Basics for Defense Lawyers** sponsored by Tressler, LLP

October 28, 2010, Instructor for **"What every Agent Needs to know about Fiduciary Liability**" Webinar sponsored by the Academy of Insurance

October 14, 2010, and updated, August 18, 2011, Instructor for **"What every Agent Needs to know about EPLI**" Webinar sponsored by the Academy of Insurance.

October 7, 2010, and updated, August 11, 2011, Instructor for **"What every Agent Needs to know about D&O**" Webinar sponsored by the Academy of Insurance.

Aug. 18, 2010 Webinar Speaker and CLE Program Lecturer on **The Evolution of Claims-Made Insurance and Current Their Current Developments, potential for Bad Faith that can arise from Diminishing Limit policie**s, sponsored by the Los Angeles office of Wilson, Elser et al. and broadcast to other offices.

May 4, 2010 CLE Seminar on **Insurance Basics for Defense Lawyers,** potential for Bad Faith that can arise from Diminishing Limit policies, sponsored by Wilson, Elser et al.

April 02, 2010, CLE Seminar on **Insurance Basics for Defense Lawyers** sponsored by Collins, Collins, Muir & Stewart

Jan. 13, 2010 Webinar Speaker and CLE Program on Claims-Made Insurance: ***Defending Against Late Notice Claims and Preserving Coverage*** sponsored by Strafford Publications.

Sept. 14, 2009 – Speaker at the International Re-Insurance Underwriters Association Mid Year Conference- ***Current Trends in Financial Services D&O from a Broker and Claims Perspective***

Mar. 2007 - Seminar on **Insurance Basics for Defense Lawyers** sponsored by Hinshaw &

Frederick J. Fisher
Curriculum Vitae

Culbertson, Los Angeles Office.

Jan 19, 2005 - So. Calif. Chapter of PLUS- Speaker on *"Introduction to Professional Liability"*

Aug 18, 2004- So. Calif. Chapter of PLUS- Speaker on *Insuring Architects & Engineers*

April, 2003- Moderator and Speaker at PLUS E&O Symposium- Phila, Pa on *"Claims made Conundrum- the meaning of Continuity dates"*

**May 2001- Current- California Approved Continuing Education Instructor on Miscellaneous Liability, Insuring Employment Practice Liability, Cyberspace Liability, Media Liability and Directors & Officers Liability (Provider # 48379)**

April, 2000- Moderator and Speaker on Insuring Multiple Disciplined Professions- Sponsored by the Southern California Chapter of PLUS

**Nov- Dec 1999- Instructor- College of Insurance- RPLU Part V- D&O and EPLI, the Potential for Bad Faith arising from ambiguous policy forms.**

Aug 21, 1997, moderator and Speaker at Western Regional PLUS sponsored event on Cyberspace Liability Insurance and exposures.

March 14, 1996, moderator and Speaker at So. California Chapter of PLUS sponsored event on Employment Practice Liability Insurance, Intentional Acts Coverage issues in Insurance Policies.

February 27, 1996, Speaker and Moderator on □□*Cyberspace Liability and Insurance Issues of the Internet*, sponsored by the Southern California Software Council.

August 17, 1995, Program Co-Chair for *PLUS Day,* sponsored by the S. California Chapter, *PLUS.* Speaker on *Introduction to Claims Made Policy forms and Standard Lines of Professional Liability*.

Nov. 1994- Moderator and Speaker for Loss Control, *PLUS National Conference*

Aug. 1994- Moderator and Speaker for Current Legal Trends in Claims Made Policies, *PLUS Day* Sponsored by the Southern California Chapter of PLUS

Aug. 1993- Moderator and Speaker for Current Legal Trends in Professional Liability, *PLUS Day* Sponsored by the Southern California Chapter of PLUS

Frederick J. Fisher
Curriculum Vitae

1986- Lecturer on insurance agents and brokers' liabilities pursuant to the new CGL claims-made policy and its significant potential for Bad Faith  given to IIAA's of: Santa Barbara, Ventura, San Fernando Valley, Los Angeles, South Bay and Long Beach.

1986- Sept- Seminar on **Insurance Basics for Defense Lawyers** sponsored by Kirtland & Packard

Speaker at PLUS meeting on claims-made underwriting problems in professional liability

1986 Speaker on agents and brokers' liabilities under the new CGL policy for Big "I" Day sponsored by the IIAA of Los Angeles, Inland Empire and Orange County.

1986 Lecturer on new CGL policy for American Agents Alliance and Harbor Insurance Co.

1986 Publisher of:  "The New ISO Forms, A Golden Road to Disaster".
Under contract with Prentice Hall to author book on insurance agents liability.

Speaker at Environmental Liability Seminars for the insurance industry.

1984-1987 **Claims training, Litigation Management and Bad Faith Risk Prevention** seminars given to Crum & Forster, American International Group, American International Adjusting Company, Equity General Agents, Lancer Insurance Company, Argonaut Insurance Company, Homestead Insurance Company and General Star Management.


**PROFESSIONAL PUBLISHING ACCOMPLISHMENTS:**

Aug. 4, 2015 (re-run Aug. 5 in Insurance Journal):  **A Different Take on Insurance Price Optimization,** published on line by Carrier Management, an Insurance Journal Publication (4th most read article that week)

June 2, 2010 – June 15, 2010- 3 part series entitled ***Current Trends - The Unintended Results of the Absolute Exclusion***  Published in *MyNewMarkets.com* E-Newsletter Sponsored by the *Insurance Journal*

Mar 23- April 3, 2009-Five part Claims Made Series : ***The History of the Claims Made Form and it's Current Problems***- Published in *MyNewMarkets.com* E-Newsletter Sponsored by the *Insurance Journal* and Re-Run for a second time February 8, 2010 – February 19, 2010,  an Insurance Journal first. This re-run served as the basis for on an Insurance Journal February 25, 2010 Webinar on the differences between occurrence and claims made coverage forms.  This series was also the 8th most read Insurance Journal on-line article of 2009. **Republished** in the

Frederick J. Fisher
Curriculum Vitae

**PLUS Blog**, November, 2014

July, 2005 The Professional Liability Manual Quarterly Update  - <u>**CONTINUITY AND PRIOR/PENDING LITIGATION EXCLUSIONS IN THE CLAIMS-MADE POLICY FORM**</u>

October 25, 2004- *Insurance Journal*- Author of article on *<u>**Professional Liability: Will the Cycle Remain Unbroken**</u>*

Nov. 1, 1999- *Insurance Week-* Author of article on Multiple Professions, Multiple (and Challenging) Liability Exposures

Feb. 15, 1999- *Insurance Week-* Arthur of Article "Y2K Readiness: An Equation with Many Variables

Nov. 10, 1997, *Insurance Journal* – Co-Arthur of Article on "A Look at the Ever-Changing Professional Liability Marketplace

Nov. 10, 1997, *Insurance Week-*  Author of Article on Standardization of EPLI Insurance

May, 1996, *The Professional Liability Manual,* Recent Discoveries in  Medical Malpractice Risk Management published by the International Risk Management Institute, an article on new exposures arising from Latex Allergies and its potential impact on Malpractice and ADA Claims, republished by *PLUS New & Views*.

February, 1996, *The Professional Liability Manual, Technocratic Liability* published by the International Risk Management Institute, an article on claims exposures arising from Internet Providers and users.

February 12, 1996, *Insurance Week*, Cyberspace is Filled with New Exposures, Coverage Needs, an article analyzing special problems in underwriting Computer Consultants and other  professional liability risks involved with the Internet.

Nov.13, 1995, *Insurance Week*, Miscellaneous Professional Liability Risks, an article analyzing special problems in selling and underwriting miscellaneous professional liability accounts.

Aug., 21, 1995, *Insurance Journal,* Agent & Broker Obligations are Part of the Law, an article re-exploring Agent & Broker ethical obligations.

January, 1995, *Professional Liability Manual*, Technical Aspects of Professional Liability  Claims,

Frederick J. Fisher
Curriculum Vitae

an 18 page article for the Practical Concerns section analyzing the techniques to successful E & O claims handling and coverage analysis.

November, 1994, *News and Views, PLUS Newsletter*, "Problems with Diminishing Limit Policies", explaining claim problems and the **Bad Faith** potential inherent with diminishing limit insurance Policies, Reprinted as quarterly supplement in the *Professional Liability Manual.*

October 31, 1994, *Insurance Journal*, "Reduce E & O Claim Loss Through Outsourcing", an article on delivering Loss Control benefits at the local level in conjunction with E & O Insurance to reduce Claim frequency.

May 2, 1994, *Insurance Week,* Due Diligence, "How to Read a Financial Statement", an article explaining the basics of reading and understanding an Insurance Company's financial statement in order to complete a Broker's due diligence obligation.

Jan. 24, 1994, *The Insurance Journal,* "Agent & Broker E & O", an article on Agent & Broker E & O claims and ways to prevent them in the future.

July 5, 1993, *The Insurance Journal,* "Pre-Underwriting Professional Liability", an article detailing ways in which to going beyond reviewing the hazard of a professional by also designing an application that reviews the risk of a claim being first made during the applied for policy term. Republished in the PLUS Monthly Newsletter, National Conference Issue, November, 1993.

April 12, 1993, *The Insurance Journal,* "The End of the California Market", an article on the current state of Insurance in California as a result of Offshore insurance scams and new legislation to combat it.

Nov, 1992 - February, 1993, various letters to the editor in Trade publications in. re. offshore insurance Scams and how it is affecting California.

July 1992 - September, 1992- various appearances testifying at State Legislative Committee hearings investigating the impact of offshore insurance scams.

July, 1992 - January, 1993- 5 appearances on various news related television stories focusing on offshore insurance scams.

May/June 1992, **PLUS Newsletter**- Author of "Reducing Traditional Loss Development in Professional Liability", an article on how effective claims management and initial investigation can reduce IBNR's. Republished August 1992, **Professional Liability Manual** quarterly supplement.

Frederick J. Fisher
Curriculum Vitae

February 1992, **Risk Financing** - Author of Chapter supplement entitled  "An Informational Approach to Risk Management Information Systems Design" as published by The International Risk Management Institute, Inc.

December 1991, **Construction Risk Management Administration** - Author of chapter supplement entitled "Claim Auditing" as published by The International Risk Management Institute, Inc., republished in August, 1992 in **The Workers Compensation Guide.**

December 1990, **Professional Liability Manual** - Senior Technical Advisor for The International Risk Management Institute on a 1,000-page technical reference manual on professional liability insurance, coverage triggers, Bad Faith Exposures and professional liability exposures.  This technical manual covers professional liability exposures for a multitude of professions: from architects and engineers and accountants through zoologists.

July 1990, **The Risk Reporter** - Author of article titled "Claims-Made Insurance Triggers", published by The International Risk Management Institute.

August 17, 1986, **The Los Angeles Times** Real Estate Section - featured in article on "Realtors Learn How to Avoid Litigation"

August 1986, **The New York Times** - quoted in article on real estate agent and broker liabilities

June 16, 1986, **The Los Angeles Daily Journal** - a review of "The New ISO Forms: A Golden Road to Disaster"

February 21, 1986, **The National Underwriter** - "ISO's  Claims-Made CGL Policy:  Three of its Major Problems and potential for Bad Faith"

February 1986, **Independent Agents Magazine** - featured in article on agent and broker liability as well as Insurer Bad Faith due to new CGL forms.

August 1985, **"The New ISO Forms, A Golden Road to Disaster"**, a Fisher Associates' treatise on the New ISO Forms with its Bad Faith Potential.

March 1981, **Broker Magazine** - "Preventing Insurance Agents and Brokers Malpractice"

January 5, 1981, **Business Insurance** - "Creating Litigation"

November, 1980, **Insurance Adjuster Magazine** - "The Early Settlement Dilemma"

Frederick J. Fisher
Curriculum Vitae

August, 1980 - **Insurance Adjuster Magazine** - "Royal Globe Aftermath- Its Bad Faith Potential"

July 16, 1980, **Business Insurance** - "Insurance Agent and Broker Liability"

June 23, 1980, **Business Insurance** - Published article on settling multiple defendant litigation/comparative negligence

February 4, 1980, **Business Insurance** - "Risk Manager's Guide to California Liability"

November 12, 1979, **Business Insurance** - interviewed in follow-up article on Royal Globe vs. Superior Court.

September 17, 1979, **Business Insurance** - Author of article on duty of self-insured to an excess carrier to settle a claim within self- insured retention or its Bad Faith implications.

May 14, 1979, **Business Insurance** - Author of article on "Royal Globe vs. Superior Court - Bad Faith"

April 16, 1979, **Business Insurance** - Author of article on "Preventing Insurance Agents Errors and Omissions"

December 25, 1978, **Business Insurance** - Featured an article on new real estate franchise errors and omissions.

March 10, 1978, **The National Underwriter** - "Handling Insurance Agents Errors and Omissions Claims"

Author of Errors & Omissions Loss Control Kit for real estate brokers.

Author of 1980 Prentice-Hall book: **"BROKER BEWARE: Selling Real Estate Within the Law"**

## EMPLOYMENT HISTORY

12-10-2010- Present          President of Fisher Consulting Group, Inc.

10-27-2014- Dec. 9, 2014     Director of Professional Liability  USG Insurance Services

Frederick J. Fisher
Curriculum Vitae

|  | 400 Continental Blvd, 6th Floor, #151 |
|  | El Segundo, CA 90245 |
|  | 724/754-9003 |
| 12-15-2010 to 08- 6- 2014 | Sr. Vice President E.L.M. Insurance Brokers, Inc, |
| 8-94 to 12-15-2010: | President and or CEO- E.L.M. Insurance Brokers, Inc. (12-31-2001) |
|  | Frederick John Fisher Insurance Broker (8-94 to Dec 31, 2001) |
|  | 1960 East Grand Ave, Ste 370 |
|  | El Segundo, California   90245 |
|  | 310/322-1301 |

The Brokerage firm is a proprietorship specializing in the Wholesale placement of Professional Liability Insurance. Responsibilities include all usual and customary responsibilities consistent with managing, staffing and operating a Brokerage Facility. These include but are not limited to direct responsibility for development of new company products and services, automation of internal company systems, and supervision of staff. Also, reviewed and implemented administrative procedures and systems in order to facilitate smooth company operations as well as developing and managing my own book of business.

1982-1995      Surplus Risk Services, Inc., dba The Fisher Associates, Adjusters.

President and principle stockholder of the corporation. The company was licensed as claim adjusters, conducting claims investigation, Substantive Claims Auditing and Claims Management and Fair Claims Practice Training for large insurance companies and Self Insured Companies throughout the United States and Canada. Our Claims Auditing techniques were adopted by AIG, The RTD (Now known as the MTA), and others. Similarly, our Attorney Management Guidelines were also used by these same organizations as a basis for their own. We also developed our in-house Claims Management System.

I was also responsible for all management and marketing duties consistent with those of the presidency of the corporation, financial responsibilities, management, supervision and training of all personnel. Directly responsible for development of new company production and services, automation of internal company systems, and supervision of staff. Also, reviewed and implemented administrative procedures and systems in order to facilitate smooth company operations. The active investigation of large exposure claims is also part of the responsibilities.

Frederick J. Fisher
Curriculum Vitae

1976 to 1982:            Miller & Gilbert, Incorporated
                         5822 Uplander Way, Suite 102
                         Culver City, California 90304
                              (213) 670-5015

As Vice President and owner of one third of all outstanding stock, my responsibilities include the hiring and supervision of all company employees, company marketing and acquiring new accounts. These include the placing of news items in various trade journals, issuing of press releases, author of articles for company publicity, supervision and training of all company personnel and staff. This includes the training of staff in the handling of insurance liability claims, self insurance administration and risk management services.

I was personally responsible for expanding the scope of Miller & Gilbert services beyond just professional liability and product liability adjusting which included the providing of risk management services, self insurance administration, underwriting consulting, and marketing consulting to insurance company clients. I was also responsible for producing new insurance company clients for the handling of their claims.

1978 to 1982:            Zillgitt & Wright Insurance Brokers
                         330 Washington Street
                         Marina Del Rey, CA 90291

Part-time producer and consultant for Real Estate franchise Error & Omission Program for seven National Franchise Organizations.

1975 to 1976:            Miller & Gilbert, Incorporated
                         4340 Redwood Highway, Suite 238
                         San Rafael, California  94903
                              (415) 499-8444

Responsible for Paralegal litigation analysis and errors and omissions claims adjusting. Specialties included attorney, real estate broker, insurance broker and medical malpractice as well as product liability and BI claims. Responsibilities included investigating and adjusting these claims for numerous client insurance companies, as well as negotiating settlement with claimant's attorneys. I also authored the company training manual.

1974 to 1975:            Ericksen, Ericksen, Lynch, Mackenroth
                         & Arbuthnot, Incorporated

Frederick J. Fisher
Curriculum Vitae

5 Jack London Square
Oakland, California
(415) 835-8376

Law Clerk for William Morton, Esquire.  Responsible for research, drafting motions and pleadings, handling and recommending discovery pursuant to insurance defense litigation and Bad Faith Defense.

1973 to 1974:        Law Offices of L. F. Haeberle III
                     216 Pine Street
                     San Francisco, California 94111
                     (415) 421-6475

Law Clerk for office attorneys.  Law offices were house counsel for Liberty Mutual Insurance Company. I Was responsible for research, drafting motions and pleadings, handling and recommending discovery pursuant to insurance defense litigation Bad Faith Defense.
.

1972 to 1973:        Mutual of New York Insurance Company
                     San Rafael, California

Salesman for life, health, and disability insurance during the evening hours, and the reason for leaving was not only better opportunities, but the work conflicted with my attending law school.

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO:

I am employed in the county of San Bernardino, State of California. I am over the age of 18 and not a party to the within action; my business address is Post Office Box 681 Silver Lakes, California 92342.

On January 3, 2017 I served the foregoing documents described as **OPENING EXPERT WITNESS DISCLOSURE: DECLARATION OF MIKLOS VARGA; ROBERT KNUDSEN AND FREDERICK FISHER** on counsel/parties in this action.

[ X ] by mailing the true copies there of enclosed in sealed envelopes addressed as stated on the attached mailing list:

Certified Mail: 7011 1150 0001 9515 7929
**Lance A. Selfridge, Esq.**
**LEWIS, BRISBOIS, BISGAARD & SMITH**
**633 West 5th Street**
**Suite 4000**
**Los Angeles, California 90071**

**Sent via email to : Lance.Selfridge@lewisbrisbois.com**
**January 3, 2017**

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at San Bernardino, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on January 3, 2017 at Silver Lakes, California.

[X] (State)   I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Miklos Varga
_____
Type or Print Name

_____
Signature

- 45 -